### S97Q0858. COLONIAL OIL INDUSTRIES et al. v. UNDERWRITERS SUBSCRIBING TO POLICY NUMBERS TO31504670 & TO31504671.

(491 SE2d 337)

FLETCHER, Presiding Justice.

The Eleventh Circuit Court of Appeals certified to this Court questions regarding the scope of an insurer's duty to investigate prior to determining whether to defend a claim brought against its insured and the effect of a wrongful refusal to defend on an insurer's right to raise policy defenses.[1] We conclude that an insurer has no duty to investigate until the insured apprises the insurer of facts that would bring the claim within the policy's coverage. We also conclude that an insurer who has wrongfully refused to defend may raise policy defenses to coverage.

Colonial Oil Industries and Colonial Terminals, Inc. (collectively, Colonial) were insured under a comprehensive general liability policy issued by an insurance underwriters cooperative (Underwriters). The policy provided coverage for defense of even "groundless, false or fraudulent" suits. Colonial was sued by Charles Gay for Colonial's dumping of allegedly hazardous material on property owned by Gay. Colonial notified Underwriters of the dispute, but also informed Underwriters that the material being dumped was not hazardous and was in compliance with Colonial's contract with Gay. Gay subsequently filed suit. Colonial forwarded the complaint to Underwriters and demanded coverage and defense of the Gay suit under its policy with Underwriters. In a letter, Underwriters denied coverage based on several exclusions in the policy, but did not seek a declaratory judgment. After Colonial settled with Gay, it sued Underwriters seeking defense and settlement costs for the failure to defend. The federal district court granted summary judgment to Colonial.[2]

---

[1] *Colonial Oil Indus. v. Underwriters Subscribing to Policy Nos. TO31504670 & TO31504671,* 106 F3d 960 (11th Cir. 1997).

[2] The district court opinion is available at 1995 U. S. Dist. LEXIS 17439 (S.D. Ga. Nov. 6, 1995).

1. The first certified question asks whether an insurer has a duty to conduct a reasonable investigation of facts outside those presented in the complaint, or otherwise presented to the insurer by its insured, prior to determining whether to defend a claim brought against the insured. The generally accepted view is that in making a determination of whether to provide a defense, an insurer is entitled to base its decision on the complaint and the facts presented by its insured.[3] The insurer is under no obligation to independently investigate the claims against its insured. This rule is sound policy because the insured is in the best position to investigate and develop facts that will bear on the coverage issue.

2. A different rule, however, applies when the complaint on its face shows no coverage, but the insured notifies the insurer of factual contentions that would place the claim within the policy coverage. The Georgia Court of Appeals held in *Loftin v. U. S. Fire Ins. Co.*,[4] that in this situation the insurer has an obligation to give due consideration to its insured's factual contentions and to base its decision on "true facts."[5] The requirement that an insurer base its decision on true facts will necessitate that the insurer conduct a reasonable investigation into its insured's contentions.[6] To relieve an insurer of any duty to investigate its insured's contentions would allow the allegations of a third-party to determine the insured's rights under its contract.[7] Placing a duty of investigation on insurers in these limited circumstances is not an unreasonable burden, especially in light of the availability of the "procedurally safe course" of providing a defense under a reservation of rights and filing a declaratory judgment action to determine its obligations.[8] An insurer who fails to investigate its insured's contentions and refuses a defense will be liable for a breach of the duty to defend if a reasonable investigation at the time would have established the potential for coverage.[9]

---

[3] Allan D. Windt, Insurance Claims & Disputes, § 4.01 (3d ed. 1995); Rowland H. Long, 1A The Law of Liability Insurance, § 5.02 (1990). See, e.g., *Al Who Enterprises v. Capitol Indem. Corp.*, 217 Ga. App. 423, 426 (457 SE2d 696) (1995); *Brayman v. Allstate Ins. Co.*, 212 Ga. App. 96 (441 SE2d 285) (1994).

[4] 106 Ga. App. 287 (127 SE2d 53) (1962).

[5] Id. at 296.

[6] *American Motorists Ins. Co. v. Southwestern Greyhound Lines,* 283 F2d 648, 649 (8th Cir. 1960) (cited with approval in *Loftin,* 106 Ga. App. at 296.) This rule appears to have wide acceptance among courts and commentators. See Windt, Insurance Claims & Disputes at § 4.03; 7C John A. Appleman, Insurance Law & Practice, § 4684.01 (Berdal ed. 1979).

[7] *Loftin,* 106 Ga. App. at 296.

[8] *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 219-220 (231 SE2d 245) (1976).

[9] See *Penn-America v. Disabled American Veterans,* 224 Ga. App. 557, 559 (481 SE2d 850) (1997) (if facts are "even arguably" within the policy's coverage, the insurer has a duty to defend), aff'd, 268 Ga. 564 (490 SE2d 374) (1997).

The holding in *Great American Ins. Co. v. McKemie*,[10] is not inconsistent with this rule. In that case, the complaint against the insured clearly showed that the plaintiff's injuries were not covered by the policy and the insured, unlike Colonial, never brought to the insurer's attention facts that would establish coverage. Thus, the insurer was properly held not to have breached its duty to defend.

3. According to the district court's summary judgment order, Underwriters denied coverage because the allegation in the Gay complaint that the material contained "waste" and "pollution" fell within certain policy exclusions. The district court found, however, that Colonial informed Underwriters of its position that the dredge material did not contain waste or pollution. The district court correctly held that this triggered Underwriters duty to investigate. Because the district court also found that a reasonable investigation would have revealed the possible existence of coverage, Underwriters breached its duty to defend.[11]

4. The second certified question concerns the insurer's right to raise policy defenses to coverage after it has made an unjustified refusal to defend. The Georgia Court of Appeals held in *McCraney v. Fire &c. Ins. Co.*,[12] that the insurer is not estopped to raise policy defenses. The rationale for this rule is that when the insurer breaches the contract by wrongfully refusing to provide a defense, the insured is entitled to receive only what it is owed under the contract — the cost of defense. The breach of the duty to defend, however, should not enlarge indemnity coverage beyond the parties' contract. This rule, which is the majority position,[13] recognizes that the duty to defend and the duty to pay are independent obligations. Although *McCraney* dealt with a third-party judgment creditor of the insured, the rationale has equal application to the insured. The insured is in no better position to create coverage that was never bargained for under its contract. Therefore, in this case, Underwriters may raise its policy defenses to coverage.

*Questions answered. All the Justices concur.*

DECIDED OCTOBER 6, 1997 —
RECONSIDERATION DENIED NOVEMBER 3, 1997.

*Ronald C. Berry,* for appellants.

---

[10] 244 Ga. 84 (259 SE2d 39) (1979).

[11] For purposes of this opinion, we assume, but do not decide, the correctness of the district court's summary judgment findings.

[12] 182 Ga. App. 895 (357 SE2d 327) (1987).

[13] See Windt, Insurance Claims & Disputes, § 4.37 at 267; 7C Appleman, Insurance Law & Practice, § 4689 at 211-212.

*Bouhan, Williams & Levy, Walter C. Hartridge, Edwin D. Robb, Jr.,* for appellee.

*Slappey & Sadd, James N. Sadd, Grant G. Morain, Jones, Day, Reavis & Pogue, Dorothy Y. Kirkley,* amici curiae.